The State petitioned this Court for a writ of certiorari to review an order entered by the Court of Criminal Appeals dismissing an appeal filed by Junior Mack Kirby; we granted certiorari review. We reverse the Court of Criminal Appeals' order dismissing Kirby's appeal. Because this case presents an issue of first impression, we have invoked § 12-3-14, Ala. Code 1975, thereby transferring this appeal from the Court of Criminal Appeals to this Court.[1]
 I. Factual Background and Procedural History
Junior Mack Kirby was convicted in 1990 of trafficking in controlled substances and was sentenced pursuant to § 13A-5-9, Ala. Code 1975, the Habitual Felony Offender Act ("HFOA"), to life imprisonment without the possibility of parole. In 2000, the Legislature amended the HFOA to allow a sentence to be imposed for certain habitual offenders less severe than life imprisonment without parole under certain circumstances. Specifically, and relevant to this proceeding, § 13A-5-9(c)(3) was amended so that a defendant with three prior felony convictions, none of which was for a Class A felony, who is subsequently convicted of a Class A felony may be sentenced to imprisonment for life or life imprisonment without the possibility of parole, in thediscretion of the trial court. Before that amendment, a sentence of life imprisonment without the possibility of parole was mandatory under § 13A-5-9(c)(3) for a Class A felony offender with three prior felony convictions.[2] In 2001, the *Page 970 
Legislature passed Act No. 2001-977 ("the Act") in an attempt to make the 2000 amendments to § 13A-5-9 retroactive. The stated purpose of the Act was "to provide further for eligibility for parole consideration of non-violent offenders." The Act, now codified as § 13A-5-9.1, states in its entirety:
 "The provisions of Section 13A-5-9 shall be applied retroactively by the sentencing judge or presiding judge for consideration of early parole of each nonviolent convicted offender based on evaluations performed by the Department of Corrections and approved by the Board of Pardons and Paroles and submitted to the court."
The Act became effective on December 1, 2001. However, because the Department of Corrections ("the DOC") and the Board of Pardons and Paroles ("the Parole Board") concluded that there were significant problems with § 13A-5-9.1, it has not yet been implemented or applied.
On September 29, 2001, the same day he approved the Act, then Governor Siegelman signed Executive Order Number 62 ("EO 62") calling for the development of a "process for evaluating non-violent offenders possibly affected by [§ 13A-5-9.1]." EO 62 directed the DOC to develop guidelines and procedures for determining which inmates would be eligible for reconsideration of their sentences under § 13A-5-9.1. EO 62 also purported to suspend operation of § 13A-5-9.1 until June 1, 2002, "by which time the Department of Corrections should have developed an evaluation process to determine which offenders are `non-violent.'"
On November 1, 2001, Kirby filed in the trial court a motion for a hearing to have his sentence reviewed pursuant to §13A-5-9.1 and EO 62. The trial court denied the motion because EO 62 called for implementation of § 13A-5-9.1 to be suspended until June 2002 pending further review. On September 30, 2002, Kirby filed a motion asking the trial court to order the DOC and the Parole Board to comply with § 13A-5-9.1. The trial court granted the motion, giving the DOC and the Parole Board 90 days in which to comply. On November 18, 2002, the State filed a motion challenging the trial court's order on the basis that § 13A-5-9.1
violated § 43, Ala. Const. of 1901 (the separation-of-powers clause). Following a hearing, the trial court on March 7, 2003, entered an order declaring § 13A-5-9.1 unconstitutional because it impermissibly delegated power to another branch of government by failing to establish criteria determining who was a "nonviolent convicted offender." The trial court thus denied Kirby's motion for a hearing, and Kirby appealed to the Court of Criminal Appeals.
On April 3, 2003, the Court of Criminal Appeals dismissed Kirby's appeal on the ground that the trial court's order was not appealable. On April 21, 2003, the Court of Criminal Appeals restored the case to its active docket. On June 10, 2003, the Court of Criminal Appeals again dismissed Kirby's appeal. The order dismissing the appeal stated:
 "Kirby's motion was filed more than 11 years after his conviction and sentence were final. We have stated that, `A simple motion, not recognized by the Rules of Criminal Procedure, filed when there is no action currently pending before the circuit court, is not sufficient to invoke that court's jurisdiction.' King v. State, 881 So.2d 542, 544 (Ala.Crim.App. 2002). *Page 971 
 "The trial court had no jurisdiction to consider the motion because Kirby had no pending case before that court. It is hereby ordered that the circuit court's ruling be, and the same is, hereby VACATED for lack of jurisdiction. Underwood v. State 439 So.2d 125, 128 (Ala. 1983)."
The State then petitioned this Court for certiorari review, which we granted.
 II. Jurisdiction to Hear a Motion Filed Pursuant to § 13A-5-9.1
We granted certiorari review because this case presents a question of first impression, which the State poses as "[w]hether the circuit court had jurisdiction under section 13A-5-9.1 to consider Kirby's motion seeking reconsideration of his sentence." Both the State and Kirby maintain that the trial court had jurisdiction to hear Kirby's motion. We agree.
In dismissing Kirby's appeal, the Court of Criminal Appeals concluded that a motion not recognized by the Alabama Rules of Criminal Procedure, filed when there is no action pending before the trial court, is insufficient to invoke the trial court's jurisdiction. With respect to a motion filed pursuant to §13A-5-9.1, we disagree. Section 13A-5-9.1 contemplates the availability of the circuit court to hear a motion seeking the implementation of that statute, and the Legislature has the power to vest the circuit courts with jurisdiction under these circumstances.
The plain language of § 13A-5-9.1 does not require that an inmate have a case pending before the circuit court in order for the inmate to file a motion for reconsideration of his or her sentence, nor does it require that the inmate invoke a particular rule of criminal procedure. Rather, § 13A-5-9.1 provides that an inmate may ask the sentencing judge or the presiding judge for relief from a previous sentence imposed pursuant to the HFOA and provides that the court is to consider the evaluation of the DOC in considering the inmate's motion. Section 13A-5-9.1 clearly confers jurisdiction on the sentencing judge or the presiding judge by giving that judge the power to apply the provisions of §13A-5-9 retroactively to "nonviolent convicted offender[s]" and by providing the procedure by which the provisions of the statute are to be applied.
Normally, a trial court loses jurisdiction to modify a sentence in a criminal case if a request for modification is not filed within 30 days of sentencing. Massey v. State, 587 So.2d 448
(Ala.Crim.App. 1991). By requiring in § 13A-5-9.1 that the provisions of § 13A-5-9 are to be applied retroactively, however, the Legislature vested jurisdiction in the sentencing judge or the presiding judge to reopen a case more than 30 days after a defendant has been sentenced. Thus, Kirby did not file what the Court of Criminal Appeals referred to as "a simple motion, not recognized by the Rules of Criminal Procedure." Instead, he filed a motion pursuant to a statute that directs the reconsideration of his sentence. Therefore, once Kirby filed his motion, the trial court had the authority to proceed with consideration of the motion. Clearly, the Legislature has the power to vest circuit courts with the authority to reopen a case that had previously been deemed closed and in which the court's decision was deemed final. See Ex parte Jenkins, 723 So.2d 649, 660
(Ala. 1998).
Furthermore, the fact that Kirby's motion was not a motion recognized by the Alabama Rules of Criminal Procedure did not deprive the trial court of jurisdiction. Section 6.04(b) of Amendment No. 328, Ala. Const. of 1901, recognizes the authority *Page 972 
of circuit courts to exercise the power conferred by § 13A-5-9.1:
 "The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law. The circuit court may be authorized to review decisions of state administrative agencies and decisions of inferior courts. It shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers, and shall have such other powers as may be provided by law."
(Emphasis added.) Section 6.11 of Amendment No. 328 grants this Court the authority to promulgate rules of procedure, including criminal procedure, but it prohibits this Court from enacting a rule that alters the jurisdiction of a court. Only the Legislature, within constitutional limits, has the authority to alter the jurisdiction of the circuit courts. Henderson v.State, 616 So.2d 406, 407-10 (Ala.Crim.App. 1993). By passing a general act of statewide application, the Legislature can change the rules this Court has promulgated governing the administration of all courts. Ex parte Kennedy, 656 So.2d 365, 367 (Ala. 1995). Section 13A-5-9.1 is an act of statewide application that confers jurisdiction upon the sentencing judge or the presiding judge to apply the 2000 amendment to the HFOA retroactively.
We conclude that the trial court had jurisdiction pursuant to §13A-5-9.1 to consider Kirby's motion to reconsider his sentence.
 III. Constitutionality of § 13A-5-9.1
Having determined that the trial court had jurisdiction to consider Kirby's motion, we reverse the Court of Criminal Appeals' order dismissing the appeal. In order to address the issue whether § 13A-5-9.1 is constitutional, we have invoked §12-3-14, Ala. Code 1975. Although § 13A-5-9.1 has been in effect for almost three years, there are no procedures in place to implement it. According to the State, the attorney general wrote a letter to the Commissioner of the DOC stating that § 13A-5-9.1
violates § 43 of the Constitution because it delegates legislative power to the executive branch and that EO 62 violates § 43 of the Constitution because it encroaches upon the constitutional power of the Legislature. The Alabama Sentencing Commission has not approved a procedure proposed by the DOC for implementing § 13A-5-9.1. The result is that there is an impasse that must be resolved without further delay.
 A. Standard of Review
In Monroe v. Harco, Inc., 762 So.2d 828 (Ala. 2000), this Court restated the long-standing rules governing the review of an act of the Legislature under constitutional attack:
 "`In reviewing [a question regarding] the constitutionality of a statute, we "approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government."' Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala. 1991) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Moreover, `[w]here the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it.' McAdory, 246 Ala. at 10, 18 So.2d at 815. In McAdory, this Court further stated:
 "`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment *Page 973 
of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'
 "246 Ala. at 9, 18 So.2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. Id."
762 So.2d at 831.
 B. Separation-of-Powers Analysis
The State first argues that § 13-5-9.1 is unconstitutional because, it argues, that section improperly delegates to the judicial branch of government the authority to grant parole, a power reserved to the legislative branch, thereby violating the separation-of-powers clause contained in § 43, Ala. Const. of 1901. Kirby argues that a trial court's only authority under §13A-5-9.1 is to modify the sentence of an inmate previously sentenced to life imprisonment without the possibility of parole. Although such a modification might then make that inmate eligible for parole, Kirby maintains that § 13A-5-9.1 does not confer upon the judicial branch the power to grant parole.
Section 13A-5-9.1 directs the sentencing judge or the presiding judge to apply the provisions of § 13A-5-9 retroactively, thereby making the benefits of the 2000 amendment to the HFOA available to inmates who were sentenced pursuant to the HFOA before it was amended in 2000. Section 13A-5-9(c)(3), as amended in 2000, allows a sentencing judge to decide in certain circumstances whether a sentence of life imprisonment or life imprisonment without the possibility of parole is appropriate for a particular inmate. In making that decision, the sentencing judge does not have the power to decide the secondary issue — whether the defendant will be granted parole should the judge sentence him or her to "straight" life imprisonment.[3] Under § 13A-5-9.1, a judge applying § 13A-5-9(c)(3) to a previously sentenced defendant merely has the authority to conduct a new sentencing hearing, and in the judge's discretion, to modify a previous sentence under which a defendant would never have been eligible for parole to a sentence of "straight" life imprisonment, under which a defendant might thereafter become eligible for parole, depending upon the factors then established by the Parole Board.
The clear reference in § 13A-5-9.1 to the provisions of §13A-5-9 makes it obvious that the trial court's only authority is to modify the sentence of an inmate who is not eligible for parole under the sentence imposed pursuant to the HFOA before its amendment in 2000, sentencing that inmate instead to a sentence under which he or she may become eligible for parole. If the trial court does determine that a defendant should receive a sentence of "straight" life imprisonment, that resentencing determination may trigger a parole evaluation by the Parole Board if the inmate has served a sufficient amount of time in prison. On the other hand, if an inmate has served so little time that he or she is not yet eligible for parole, that resentencing determination will not result in immediate parole consideration. Thus, § 13A-5-9.1 does not confer upon the judicial branch the power to grant parole.
 C. Vagueness Analysis
The State also argues that § 13A-5-9.1 is unconstitutionally vague because it provides that only a "nonviolent convicted offender" *Page 974 
is entitled to retroactive application of § 13A-5-9, but it does not provide any standards for determining which inmates can be classified as "nonviolent convicted offenders." The State also argues that the statute is vague because it does not define the factors that should be taken into account in determining who is eligible for resentencing under the statute. Finally, the State argues that the statute is vague because it does not make clear which entity should decide whether an inmate is a "nonviolent convicted offender" within the meaning of § 13A-5-9.1. Kirby argues that the language of the statute provides reasonably clear standards to guide the trial courts, the DOC, and the Parole Board in deciding which offenders are entitled to resentencing. Because § 13A-5-9.1 sufficiently narrows the class of people to whom it applies, Kirby argues, its language is not unconstitutionally vague.
It is well established that the Legislature may delegate "the power to execute and administer the laws," so long as in so doing it provides "reasonably clear standards governing the execution and administration of the statute." Folsom v. Wynn,631 So.2d 890, 894 (Ala. 1993). Reading § 13A-5-9.1 in conjunction with §13A-5-9, it is clear that a sentencing judge or a presiding judge can resentence only two narrowly defined classes of habitual offenders: those who had been sentenced to life imprisonment without the possibility of parole under the mandatory provisions of the HFOA upon conviction of a Class A felony with no prior Class A felony convictions; and those who had been sentenced to life imprisonment under the mandatory provisions of the HFOA upon conviction of a Class B felony. Moreover, of those habitual offenders, the judge can resentence only those who are nonviolent offenders.
We conclude that the state's trial judges have the authority under the statute to determine whether a defendant is a nonviolent offender and that those judges are competent to make that determination based upon the nature of the defendant's underlying conviction, other factors brought before the judge in the record of the case, and information submitted to the judge by the DOC and the Parole Board concerning the inmate's behavior while incarcerated. It is axiomatic that only the sentencing judge or the presiding judge should evaluate the inmate's crime and his or her conduct associated with that crime in deciding whether the inmate is a nonviolent offender, just as the judge evaluated those factors at the time the inmate was originally sentenced. Another factor in determining whether the inmate is a nonviolent offender, however, should be a consideration of the inmate's conduct while incarcerated, which knowledge is within the purview of the DOC. Section 13A-5-9.1 provides that the DOC will conduct an evaluation of the inmate's performance while incarcerated and submit its evaluation to the court so the judge can take that information into account in determining whether the inmate is eligible for reconsideration of his or her sentence. Although § 13A-5-9.1 is not a model of clarity, it does provide reasonably clear standards for its execution and administration; therefore, the trial court erred in declaring it unconstitutional.
We note that one of the problems Kirby encountered in getting his motion for reconsideration of his sentence heard in the trial court was the failure of the DOC to provide that court with the evaluation contemplated by § 13A-5-9.1. While the information available to the court in the DOC's evaluation will be helpful in making its determination, we conclude that the administration of § 13A-5-9 requires *Page 975 
that if the DOC does not provide the evaluation in a timely fashion, the State will have waived any input as to the inmate's conduct while incarcerated that the sentencing judge or the presiding judge might otherwise have considered in determining whether the inmate is a nonviolent offender.
In Rice v. English, 835 So.2d 157 (Ala. 2002), we discussed the judiciary's authority to review legislative acts, quoting Judge Learned Hand's caution that judicial review "`need not be exercised whenever a court sees, or thinks that it sees, an invasion of the Constitution.'" 835 So.2d at 163 (quoting Learned Hand, The Bill of Rights: The Oliver Wendell Holmes Lectures,1958, 10-11 (Harvard University Press 1958)). In holding that §13A-5-9.1 is not unconstitutional, we adhere to the admonition of this Court in Ex parte Selma Gulf R.R., 45 Ala. 696 (1871), that we should refrain from exercising the power of judicial review "unless some express clause of the constitution wasclearly disregarded." 45 Ala. at 728 (emphasis added). We therefore decline the State's request to invoke what Judge Hand described as "`no doubt a dangerous liberty, not lightly to be resorted to.'" 835 So.2d at 163, quoting L. Hand, at 29. No basis exists for further delay of the retroactive application of the 2000 amendment to § 13A-5-9 to allow trial courts to modify the sentences of those eligible inmates formerly sentenced under the HFOA before its amendment.
 IV. Conclusion
We reverse the order of the Court of Criminal Appeals dismissing Kirby's appeal, and on transfer of the appeal to this Court, we reverse the judgment of the trial court declaring §13A-5-9.1 unconstitutional and remand this cause for the trial court to consider Kirby's motion for reconsideration of his sentence of life imprisonment without the possibility of parole.
REVERSED AND REMANDED.
NABERS, C.J.,* and HOUSTON, SEE, BROWN,*
JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] Section 12-3-14, Ala. Code 1975, allows for the transfer to this Court of a case over which the Court of Criminal Appeals would otherwise have had jurisdiction.
[2] Section 13A-5-9(c)(2) was also amended to provide that a defendant with three prior felony convictions who was subsequently convicted of a Class B felony must be punished by a sentence for life imprisonment or any term of not less than 20 years. Before the amendment, § 13A-5-9(c)(2) provided only for a sentence of life imprisonment under such circumstances.
[3] "Straight" life imprisonment is the term used to describe the alternative to a sentence of life imprisonment without the possibility of parole.
* Although Chief Justice Nabers and Justice Brown were not present at oral argument on June 8, 2004, Chief Justice Nabers has listened to the audiotape of that oral argument and Justice Brown has viewed the videotape of that oral argument.